**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

SETH NEWMAN, *on behalf of himself and all others similarly situated,*

Plaintiff,

v.

U-HAUL CO. OF NEW YORK AND VERMONT, INC., U-HAUL INTERNATIONAL, INC. and AMERCO

Defendants.

---

Case No.:

**CLASS ACTION COMPLAINT**

JURY TRIAL DEMANDED

Plaintiff SETH NEWMAN (hereinafter, "Plaintiff NEWMAN" or "Plaintiff"), on behalf of himself and all others similarly situated in the United States, by and through his undersigned counsel, hereby bring this Class Action Complaint against Defendants, U-HAUL CO. OF NEW YORK AND VERMONT, INC., U-HAUL INTERNATIONAL, INC. and AMERCO (collectively, "Defendants" or "U-Haul") and alleges the following:

**NATURE OF THE ACTION**

1. Defendant U-HAUL CO. OF NEW YORK AND VERMONT, INC. is a subsidiary of U-HAUL INTERNATIONAL, INC., which is a subsidiary of AMERCO. Defendants operate

in the moving equipment rental business on the East Coast and throughout the United States, selling a "do-it-yourself" moving system in 21,000 locations within 50 U.S. states and 10 Canadian provinces. This network system has allowed the U-Haul brand to grow into a fleet of about 139,000 trucks, 108,000 trailers and 38,000 towing devices. In addition, the Defendants offer over 536,000 rooms and "47 million square feet of storage space at owned and managed facilities throughout North America."[1] Defendants claim to be the "largest installer of permanent trailer hitches in the automotive aftermarket industry."[2]

2.    U-Haul has long represented itself as offering top-notch customer care within the moving industry. As an industry leader U-Haul holds itself out as a quality brand with honest employees, a great management team, and a commitment to great customer service.

3.    However, in recent years Defendants have left consumers bewildered and disappointed with their refusal to address problems created by their own system failures, dishonest advertisements, and inattentive management.

4.    Most significantly, Defendants have refused to live up to their reservation guarantee policy, which states "When you make a truck or trailer reservation, we guarantee to provide you with the equipment size, location and pick up time, as agreed. Should you not receive the equipment size, location and pick up time you agreed to, U-Haul will pay you $50."

5.    As detailed below, this reservation guarantee policy arose out of earlier litigation alleging that U-Haul had engaged in fraudulent business practices by promising customers that their reservation was "confirmed" and then forcing them to wait hours or days or travel long distances to pick up their rental equipment.  The guarantee was part of a settlement the purpose of which was to deter such conduct in the future.

---

[1] https://www.uhaul.com/About/History/
[2] https://www.uhaul.com/About/History/

6.     As part of their extensive and comprehensive nationwide marketing campaign, Defendants actively promote their reservation guarantee policy on their website and marketing material.  Defendants' reservation guarantee representations are central to the marketing of their moving services, because these representations assure consumers that they will in fact receive the equipment they ordered or, at a minimum, be compensated in the event that they do not.

7.     In this case, Defendants promised Plaintiff NEWMAN a 15-foot truck at the location he selected but failed to deliver on that promise. Plaintiff NEWMAN followed all the steps required to ensure that he received his truck at his designated location, but Defendants neither provided him with the truck he ordered nor compensated him with $50, as promised by their reservation guarantee policy.

8.     Plaintiff NEWMAN's experience was far from unique.  Defendants have deceived hundreds of thousands of consumers throughout New York and the United States into renting moving equipment by cultivating the expectation that their equipment would be timely available at their designated location and that they would be compensated if it was not. However, Defendants consistently fails to pay consumers the $50 when the ordered equipment is unavailable at the designated location.

9.     This lawsuit seeks redress for the deceptive manner in which Defendants have marketed and continue to market their reservation guarantee policy to the general public. Plaintiff brings this proposed consumer class action individually and on behalf of all other persons similarly situated, who, from the applicable limitations period up to and including the present (the "Class Period"), did not receive $50 when the equipment they ordered was unavailable at the designated time and location.

10. Plaintiff seeks to secure, among other things compensatory damages, statutory damages, punitive damages, equitable and declaratory relief, restitution, and alternative damages, for similarly situated purchasers, against Defendants, for violating New York statutes that are designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising. These statutes include New York's Deceptive Acts or Practices Law (NY GBL § 349), and New York's False Advertising Law (NY GBL § 350). Plaintiff also brings claims for Common Law Fraud and Breach of Contract.

11. Plaintiff expressly does not seek to enforce any state law that has requirements beyond those required by federal laws or regulations.

**JURISDICTION AND VENUE**

12. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B), in which a member of the putative class is a citizen of a different state than Defendants, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. *See* 28 U.S.C. § 1332(d)(2).

13. Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C § 1332 because the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states.

14. This Court has personal jurisdiction over Plaintiff because Plaintiff submits to the Court's jurisdiction. This Court has personal jurisdiction over Defendants, pursuant to New York Statute N.Y. CVP. Law § 302, because they conduct substantial business in this District. Some of the actions giving rise to the Complaint took place in this District, and Plaintiff's claims arise out of Defendants operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state; committing a tortious act in this state; and

causing injury to person or property in this state arising out of Defendants' acts and omissions outside this state. Additionally, this court has personal jurisdiction over Defendants because their moving equipment and storage facilities are advertised, marketed, distributed, and sold throughout New York State. Defendants engaged in the wrongdoing alleged in this Complaint throughout New York State, and Defendants have sufficient minimum contacts with New York and/or otherwise have intentionally availed themselves of the markets in New York State, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendant is engaged in substantial and not isolated activity within New York State.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to these claims occurred in this District, the Defendant has caused harm to class members residing in this District, and the Defendant is a resident of this District under 28 U.S.C. 1391(c)(2) because it is subject to personal jurisdiction in this district.

## PARTIES

***Plaintiff***

16. Plaintiff SETH NEWMAN is, and at all times relevant hereto has been, a citizen of the State of Massachusetts and a resident of Newtown, Massachusetts. On March 7, 2018, Plaintiff NEWMAN placed an order on www.uhaul.com to rent a 15-foot truck from U-Haul's dealer in Rhinebeck, New York—J&J Automotive—to be picked up on March 10, 2018 for a one-way trip to the West Roxbury neighborhood of Boston. Plaintiff NEWMAN paid a total of $220.20 for the 15-foot truck, including taxes and fees. Plaintiff NEWMAN ordered the truck believing it would be at the location that he had selected. The rental equipment, rental date, and rental location he selected were all confirmed to him in an email from Defendant on March 7, 2018.

17.   However, Plaintiff NEWMAN was contacted by a U-Haul representative the day before the rental date, May 9, 2019, and told that he could no longer pick up the truck at the Rhinebeck, NY facility and that he would instead be required to pick it up at Defendant's Port Ewen, NY facility, which was 20 miles from Rhinebeck and 20 miles out of his way.  U-HAUL offered Plaintiff NEWMAN a $20 discount to compensate for this.

18.   On March 14, 2018, 4 days after Plaintiff NEWMAN drove the U-Haul truck from Port Ewen to the West Roxbury section of Boston, Plaintiff NEWMAN called Defendant's 1-800 customer service line and told a representative that, as per U-HAUL's reservation guarantee policy, he was owed $50, not the $20 discount he had received.  However, the representative told Plaintiff NEWMAN that he was not owed the $50 because the reservation guarantee only took effect after the phone conversation of March 9, 2018.  Since no changes to his reservation had been made after that point, he could not benefit from the reservation guarantee.  Plaintiff NEWMAN protested that these statements were inconsistent with the reservation guarantee policy as explained on Defendants' website.   But the customer service representative would not provide Plaintiff NEWMAN with an additional $30 (the difference between the $50 owed under the reservation guaranteed policy and the $20 discount Plaintiff NEWMAN had already received).

19.   As a result of Defendants' failure to make good on their promise, Plaintiff NEWMAN suffered injury in fact and lost money. Had Plaintiff NEWMAN known that the truck he ordered would not be available at the Rhinebeck, NY location and that Defendant would not make good on its reservation guaranteed policy, he would not have ordered the trailer.

***Defendants***

20.   Defendant U-HAUL CO. OF NEW YORK AND VERMONT, INC. is a corporation organized under the laws of New York with its headquarters at 139 Broadway, Albany, New York

12202 and an address for service of process at the CT Corporation System, 111 Eighth Avenue, New York, NY 10011. It is a subsidiary of U-HAUL INTERNATIONAL, LLC.

21. Defendant U-HAUL INTERNATIONAL, LLC is a corporation organized under the laws of Nevada with its headquarters at 2727 N. Central Avenue, Phoenix, AZ 85004 and an address for service of process at CT Corporation System. 3800 N. Central Ave., Suite 460, Phoenix, AZ 85012. Defendant U-HAUL INTERNATIONAL, LLC develops and manufactures moving equipment and storage rental units for consumer and professional markets. It provides moving equipment and storage throughout the United States through a network of suppliers. Defendant U-HAUL INTERNATIONAL, LLC manufactures, markets, and sells the U-Haul brand, which includes rental trucks, trailers, self-storage units and other pieces of equipment. It is a subsidiary of AMERCO.

22. Defendant AMERCO is an American corporation organized under the laws of the State of Nevada, with its headquarters at 5555 Kietzke Lane, Suite 100, Reno, Nevada 89511 and an address for service of process at The Corporation Trust Company of Nevada, 701 S Carson Street, Suite 200, Carson City, NV 89701.

## FACTUAL ALLEGATIONS

23. Defendants' longstanding history of violations of consumer protection laws has been amply documented. In 2008, Santa Cruz Superior Court Judge Samuel S. Stevens ruled in favor of the plaintiffs in a class action lawsuit brought against U-Haul and its reservation policy. In his ruling, Judge Stevens observed that U-Haul "had used the words 'confirmed reservation' in order to lock up customers as soon as possible and minimize the chances that customers are going to shop around."[3] Judge Stevens found that U-Haul had engaged in fraudulent business practices by

[3] http://articles.latimes.com/2008/jan/18/business/fi-uhaul18

promising customers that their reservation was "confirmed" and then forcing customers to wait hours or days or travel long distances to pick up their rental equipment. He then issued an injunction "barring U-Haul agents from promising 'confirmed reservations' for one-way equipment rentals in California."[4] The injunction was later removed, but a settlement agreement instituted U-Haul's reservation guarantee policy, according to which U-Haul agreed to compensate customers when it fails to fulfill their rental orders.[5]

24. Unfortunately, this decision has not remedied the problem. Despite many complaints from consumers, Defendants continue to engage in fraudulent and deceptive practices by failing to make good on their reservation guarantee policy.

25. Defendants possess and exercise the authority to make changes in the policies and practices and to ensure that their standards and policies are being followed, including their reservation guarantee policy, but failed to do so.

26. Defendants violated laws against consumer fraud and false advertising by advertising a false reservation guarantee claim to Plaintiff and the Class in an effort to induce Plaintiff and the Class into ordering moving equipment from them. In fact, consumers have been regularly denied the moving equipment they ordered at the location they selected and then denied any compensation for this. Plaintiff and the Class would not have attempted to rent vehicles from U-Haul had they known that it would not make good on its reservation guarantee policy.

**<u>Consumer Complaints Regarding U-Haul</u>**

27. Consumer complaints about U-Haul and the fraudulence of its reservation guarantee policy abound. Here is a small sampling:

28. Gregg from California recounts:

---

[4] http://articles.latimes.com/2008/jan/18/business/fi-uhaul18
[5] http://articles.latimes.com/2008/jan/18/business/fi-uhaul18

I said to the clerk "so, I'm getting a 50 dollar discount on this, right?" and he tells me he cant do that. I point to the poster and say "Your poster says that I'm guaranteed equipment, location and time… none of those criteria have been met today." He turns around and looks at the poster like he's never seen it before in his life, and turns back around and says "well you are getting a truck, i cant give you 50 dollars and a truck."

I knew this was complete BS, but it was obvious I wasn't going to get anywhere with this clerk and I was already an hour behind schedule. So I decide to go to the other location and get the 14 foot truck.. which I get, and have the same conversation with the clerk there about this so called guarantee. I get the same answer from him. Of course after all of this i was seething mad, and I decided that I better go home and read the fine print on this "guarantee", before I strangle the guy behind the counter.

Here it is:

Item number 5 does indeed state that they can substitute equipment, but ONLY if it is of equal or greater value than the equipment reserved.

I was promised a certain truck (or better) at a certain location, at a certain time, or else I would receive 50 dollars. What I got was a different truck at a different location at a different time, and no 50 dollars.

So, this means that Uhaul doesn't make good on their guarantees and you cannot rely on them.

https://consumerist.com/2008/06/11/despite-class-action-lawsuit-u-hauls-50-reservation-guarantee-is-still-completely-meaningless/

29.    Jack of Mobile, Alabama explains:

On Oct 20, 2016 I made an online reservation at U-Haul for a tow dolly. U-Haul has a reservation guarantee which says "When you make a reservation, we guarantee to provide you with the equipment, location, and pick up time agreed. Should you not receive the equipment size, location, and pick up time you agreed to U-Haul will compensate you $50." I received a call from U-Haul the day before my scheduled pick up day saying the equipment was not available at the location in my reservation and that I would need to drive to a location 40 miles away. U-Haul will not honor the reservation guarantee since I agreed to go to the other location. I only agreed to do this because at this point I had no option. Their reservation guarantee is misleading and worthless.

When I went to the other location to pick up the tow dolly I noted one of the straps was torn. They indicated they do not keep the replacement straps and that I would need to drive the dolly back to the location where I had made my original reservation to have the strap replaced. This is the second time this has happened to me where U-Haul sent me to a non-official U-Haul site (one at a convenience store and one at a used car lot) where I had to wait a very long time because they don't have staff dedicated to U-haul equipment and then had to drive equipment to official an U-Haul site to have the equipment repaired. In summary don't plan on picking up the equipment where you reserved it, don't expect them to honor their reservation guarantee, and allow time for equipment to be transported and repaired at another U-Haul site.

https://www.consumeraffairs.com/company/uhaul.html?page=2

30. Marce of Roslidale, Massachusetts relates:

> Where can I rate the negative stars? My story is very simple. They have a "Your reservation is guaranteed or we will give you $50." policy. All I can expect is for them to follow through. I am not asking for much. Moving is not easy! All I wanted was a truck to move 17' for 48 hours, since they could not do it. I said I found this on the website. I ask to please have my $50. They said "no problem we will process it." Then I never received it. I later received an email said "You are all set to pick up your truck in Malden." I was like this is crazy. I cancelled my reservation!

https://www.consumeraffairs.com/company/uhaul.html?page=3

31. Katie of Waco, Texas writes:

> Nothing like being hung up on and called "unreasonable" when I requested that the $50 "guarantee" be applied to our reservation after the trailer was not available at the reserved location, but rather at an alternate location. I was spoken to very rudely and told I should be happy to drive to an alternate location because some people had to drive farther. Also, apparently U-Haul is run by a regional manager in Texas, as she does not have a supervisor.

https://www.consumeraffairs.com/company/uhaul.html?page=5

32. Todd of Colorado Springs, Colorado tells us:

> I reserved a truck three weeks prior to my move, Friday the 29th. On wed the 27th at 6:45 pm (15 min prior to closing) the transportation office called to tell me that no trucks were available. I live two block from the rental location and the lot is full of trucks. The agent tells me that I could drive 300 miles to NB and pick up a truck and that she would cover miles and two additional days. I considered it but was not able to drop everything, my packing my Job etc... so NB would not work. I requested the $50.00 the website lists as compensation for Uhaul not having a truck available and I was told I did not qualify. As a result I will be delayed 6 days, miss a job interview and incur additional costs. Luckily my landlord is a stand up guy and he is very accommodating. I will never use Uhaul again, each phone call has been a lesson in stone walling. They display a lack of customer service and integrity. Very disappointed.

https://www.consumeraffairs.com/company/uhaul.html?page=8

33. One former U-Haul customer service representative explained on Quora that not making good on the reservation guarantee is U-Haul's default policy:



U-Haul International U-Haul

**Have you received $50 from U-Haul's reservation guarantee?**

Answer Request Follow 2 Comment Downvote

1 Answer

Erick Wagner, former Customer Service Representative at U-Haul (2014-2015)

Answered Sep 23, 2017

I used to work there and I promise you'll never get that 50. They'll just reschedule you for another size truck at another location and tell you have a nice day

70 Views

https://www.quora.com/Have-you-received-50-from-U-Hauls-reservation-guarantee

**Plaintiff NEWMAN's Experience**

34. Plaintiff NEWMAN was required to make three trips in February and March 2018 from Rhinebeck, NY to the West Roxbury neighborhood of Boston in order to help his mother move her belongings to her new home in Massachusetts.

35. Being familiar with U-Haul's reservation guarantee, Plaintiff NEWMAN chose to rent the truck he needed from U-Haul. He assumed that Defendants' reservation guarantee policy provided it with a strong incentive to ensure that the equipment he would order would be available at the location and time from which he ordered it. In the worst case scenario that the equipment was unavailable at the correct time and place, he assumed that he would at least be compensated $50.00.

36. Plaintiff NEWMAN made his first U-Haul trip from Rhinebeck, NY to West Roxbury, MA on February 16, 2018. He rented a fifteen-foot truck from Defendant for $240.95, including taxes and fees.

37.    On March 7, 2018, Plaintiff NEWMAN ordered a second fifteen-foot truck from Defendant, to be picked up on March 10, 2018 at the same Rhinebeck, NY facility for another one-way trip to West Roxbury, MA.  After making the online order on www.uhaul.com, Plaintiff NEWMAN received an email that same day from Defendant confirming the order.  The email stated "Your order is confirmed," stated his "master order number" as 23329218, and listed J&J Automotive in Rhinebeck, NY as his March 10, 2018 pick up location. *See* **Exhibit A**.

38.    On March 9, 2018, Plaintiff NEWMAN received a call from a U-Haul representative, who informed him that the fifteen-foot truck he had ordered would not be available at the Rhinebeck facility and that he would have to pick it up at Defendant's Port Ewen, NY facility. Port Ewen is about 20 miles from Rhinebeck, so the change represented a major inconvenience for Plaintiff NEWMAN.  But since the planned trip was the very next day, Plaintiff NEWMAN did not have time to investigate other options, and so he accepted the change, which was later confirmed to him in an email. *See* **Exhibit B**.

39.    The U-Haul representative offered to increase Plaintiff NEWMAN'S mileage limit to accommodate the new route.  This did not help Plaintiff NEWMAN in any way, however, since the previous mileage limit was already sufficient to cover the extra travel that picking the truck up in Port Ewen would involve.  The representative also offered Plaintiff NEWMAN a $20 discount. Plaintiff NEWMAN knew that this was inadequate compensation, since he was owed $50, not $20, under the reservation guarantee policy.   However, Plaintiff NEWMAN was immediately preoccupied with making the trip the following day and the new difficulties that the location change had created.  So he did not press the point at the time.

40.    Plaintiff NEWMAN'S third and final trip from Rhinebeck, NY to West Roxbury was scheduled for March 16, 2018.  This third order was placed on March 12, 2018.  Two days later,

on March 14, 2018, Plaintiff NEWMAN called Defendant's national customer service line in order to ask Defendant to make good on its reservation guarantee policy. He explained that Defendant did not provide the fifteen-foot truck he ordered for March 10, 2018 at the Rhinebeck facility and instead forced him to travel to Port Ewen to pick it up. He had been compensated with $20. But this fell short of the $50 he was owed under the reservation guarantee policy. Thus, Defendant needed to pay him an additional $30.

41. The first customer service representative with whom Plaintiff NEWMAN spoke told him that he was not owed any additional sums because the reservation guarantee was only activated after a rental order was confirmed. Plaintiff NEWMAN protested that his order for the truck on March 10, 2018 had been confirmed on March 7, 2018: After placing the order online, he received an email stating "Your order is confirmed." Since the pick-up location was changed after this confirmation, on March 9, 2018, the reservation guarantee was operative and he was owed an additional $30.

42. At this point, Plaintiff NEWMAN was transferred to what he believed was the customer service representative's supervisor. After hearing Plaintiff NEWMAN's complaint, the supervisor informed him that he would need to speak to someone else and placed him on hold for what seemed like an eternity. When the supervisor finally returned, she told Plaintiff NEWMAN that someone else would be calling him within 72 hours.

43. Two days later, Plaintiff NEWMAN received a call from a third U-Haul representative, who told him that the reservation guarantee was only activated after a <u>phone</u> confirmation, not after the electronic confirmation he received on March 7, 2018 immediately after placing his order. Since the phone conversation transpired on March 9, 2018 and Plaintiff NEWMAN agreed to pick up the truck in Port Ewen, Defendant had fulfilled his reservation and

did not owe him any additional monies. Plaintiff NEWMAN protested that this explanation was inconsistent with the "green stamp" guarantee he saw on Defendant's website, which tied the reservation guarantee to the making of the reservation, not to any confirmatory phone call. However, the representative still refused to make good on the reservation guarantee policy and provide Plaintiff NEWMAN with an additional $30.

**A Reasonable Consumer Would Be Deceived By Defendants' Conduct**

44. The reservation guarantee viewed by Plaintiff NEWMAN as he was ordering the truck for the March 10, 2018 trip stated as follows:

> **$50 reservation guarantee**
>
> When you make a truck or trailer reservation, we guarantee to provide you with the equipment, size, location, and pick up time as agreed. Should you not receive the equipment size, location, and pick up time you agreed to, U-Haul will compensate you $50.

45. This representation appeared on the "checkout" page where customers enter their billing and payment information, just to the right of where they enter their credit card information. *See* **Exhibit C**.

46. Identical language, with some additional bolding for emphasis, could also be found elsewhere on Defendant's website, such as through a pop-up window that could be viewed after customers finish entering their "checkout" information":

> **$50 reservation guarantee**
>
> When you make a truck or trailer reservation, we guarantee to provide you with the **equipment, size, location, and pick up time as agreed.**
>
> Should you not receive the equipment size, location, and pick up time you agreed to, **U-Haul will compensate you $50.**

*See* **Exhibit D**.

47.    The "checkout" page where Plaintiff NEWMAN entered his billing and payment information (and viewed the reservation guarantee representation in ¶ 45) contains a small, inconspicuous link titled "Reservation Advisements" just under the "Order Summary." *See* **Exhibit C**.

48.    A customer who clicked the "Reservation Advisements" link would be taken to another page with a different, highly qualified version of the reservation guarantee, stating:

> **Reservation guarantee**
>
> U-Haul agrees to contact a reserved customer the day prior to pickup to finalize time, place and equipment size.    If this varies from customer's reservation preference and an acceptable alternative is not agreeable, U-Haul will make a $50 "Reservation Guarantee" payment, the reservation will be terminated and the matter closed.
>
> Should U-Haul, through its fault, fail to contact the customer the day prior and be unable to meet preferred time, place, or size, then the $50 reservation guarantee will be paid and U-Haul will still attempt to fill the reservation.

*See* **Exhibit E**.

49.    Thus, whereas the original reservation guarantee placed prominently adjacent to the payment information section of the "checkout" page tied the guarantee to the actual reservation made by a customer, the qualified reservation guarantee accessed through the "Reservation Advisements" link tied the guarantee to a confirmatory phone call made the day prior to the pick-up date.    Under the original reservation guarantee, a customer will always receive $50 if his original reservation cannot be fulfilled, even if U-Haul proposes an alternative arrangement and the customer agrees to it.    Under the qualified reservation guarantee, however, a customer will not receive the $50 if he agrees to the alternative arrangement during a phone call from a U-Haul representative made the day before the pick-up date, even if the alternative arrangement is highly inconvenient (as it was for Plaintiff NEWMAN).

50.    Since customers have already set aside the following day for a move and no longer have time to investigate other moving/rental possibilities, they will frequently be left with no choice but to agree to U-Haul's alternative proposal, even if it is very inconvenient, because they will otherwise be unable to make their planned move at all.  As a result, U-Haul's qualified reservation guarantee actually guarantees very little and is more of a marketing gimmick than a guarantee.

51.    Plaintiff NEWMAN did not, and a reasonable consumer would not, click the "Reservation Advisement" link and thereby view the qualified reservation guarantee.  This is for the following reasons:

(a)  The "Reservation Advisement" link is small and inconspicuous.

(b)  The "Reservation Advisement" link is tucked underneath a customer's "Order Summary" information, not underneath the "**$50 reservation guarantee**" announcement, where it logically belongs.  *See* **Exhibit C**.

(c)  The link is titled "Reservation Advisement," and **not** "Reservation Guarantee Advisement."  Thus, Plaintiff NEWMAN and other reasonable consumers were not given any notice that the information contained in the link had anything to do with U-Haul's reservation guarantee policy.

(d)  The "**$50 reservation guarantee**" announcement located to the right of the payment information was unambiguous and so did not require any additional clarification.  Thus, Plaintiff NEWMAN and other reasonable consumers had no reason to believe that U-Haul needed to address the guarantee again through an inconspicuous, misleadingly titled and illogically placed link.  The qualified reservation guarantee does not clarify some ambiguity in the original reservation guarantee or fill in some minor details.  Rather, it

fundamentally alters the terms of the guarantee, eviscerating most of its benefits for consumers. The qualified reservation guarantee is <u>logically incompatible</u> with the original reservation guarantee, and reasonable consumers had no reason to suspect that U-Haul was employing an inconspicuous, misleadingly titled and illogically placed link to contradict itself in this manner.

52.    The real purpose of the "<u>Reservation Advisement</u>" link and the qualified reservation guarantee it contained was not provide consumers with truthful information about the terms of their rental agreements with U-Haul. On the contrary, U-Haul knew that these would be overlooked by reasonable consumers. U-Haul used the original (more generous) reservation guarantee to lure in consumers with the thought that they will receive $50 if U-Haul does not provide the equipment that they reserved online at the time and place for which they ordered it. When U-Haul could not deliver this but preferred not to compensate consumers with the promised $50, it then invoked the qualified reservation guarantee as its excuse (knowing that most consumers will not have seen it).

53.    After Plaintiff NEWMAN spoke with U-Haul's representatives—at some point between March 20, 2018 and April 3, 2018—U-Haul placed the qualified reservation guarantee in a more prominent position on the "checkout" page, just to the right of the sections for consumers' contact information and billing address. *See* **Exhibit F**. So consumers can now more readily see that actual nature of U-Haul's "guarantee."

54.    However, this new display was not operative when Plaintiff NEWMAN reserved a truck for the March 10, 2018 trip to Massachusetts or during most of the Class Period. Moreover, this change betrays U-Haul's awareness that its former reservation guarantee announcement was deceptive and misleading.

55.    A reasonable consumer would be deceived and/or mislead by U-Haul's deceptive scheme as detailed herein.

56.    Defendant's reservation guarantee policy was material to a reasonable consumer's decision to procure U-Haul services.  The policy was reasonably seen as increasing the likelihood that the equipment ordered will be available at the designated time and place and as compensating consumers in the event that it is not.  The reservation guarantee policy thus increased the attractiveness of U-Haul over other transportation options.

57.    Reasonable consumers, such as Plaintiff and the Class, reasonably expected that when they ordered rental moving equipment it would be at the location they selected or that they would be compensated with $50, as guaranteed by Defendants.

58.    Reasonable consumers (including Plaintiff and the Class) expect businesses such as Defendants to honestly advertise and follow company policies, and businesses such as Defendants intend and know that consumers rely upon advertisements and reservation policies in making their consumer decisions. This expectation by consumers is reasonable, since companies are prohibited from engaging in deceptive acts or practices in the conduct of any business, trade or commerce under New York State law and the consumer protection laws of every state in the United States and the District of Columbia.

**Plaintiff and the Class Relied on Defendants' False Promises**

59.    Plaintiff and the Class reasonably relied to their detriment on Defendants' false and misleading reservation guaranteed misrepresentations.  They would not have placed their orders with Defendant had they known that it would not fulfill its reservation guarantee policy.

60.    Plaintiff's and the Class's reliance was reasonable because New York and other states have placed requirements on companies that are designed to ensure that the claims they make about their products or services are truthful and accurate.  Defendants intended that Plaintiff and the

Class rely on their reservation guaranteed policy. Indeed, the purpose of that policy is precisely to induce reliance.

61. Plaintiff and the Class did not know, and had no reason to know, that the rental moving equipment would be unavailable at the time and place at which they reserved it or that Defendants would not make good on their reservation guarantee policy and compensate them $50.

**Plaintiff and the Class Were Injured**

62. Plaintiff and the Class were damaged by Defendants' deceptive conduct when Defendant failed to deliver the benefit of their bargain to them by failing to compensate them $50 when the equipment they ordered was not available at the time and place promised by Defendants.


## CLASS ACTION ALLEGATIONS

63. Plaintiff NEWMAN seeks relief in his individual capacity and as a representative of all others similarly situated in the United States. Pursuant to Rule 23(a), 23(b)(2) and/or 23(b)(3) of the Federal Rules of Civil Procedure, he seeks certification of the following class:

> All persons in who 1) ordered U-Haul moving equipment in the United States, 2) were not provided with the equipment they ordered at the time and location for which they ordered it, and 3) were not given $50 in compensation for the equipment's unavailability, during the applicable limitations period, and/or such subclasses as the Court may deem appropriate. ("the Nationwide Class")

64. In the alternative, Plaintiff seeks certification of the following class:

> All persons in who 1) ordered U-Haul moving equipment in New York, 2) were not provided with the equipment they ordered at the time and location for which they ordered it, and 3) were not given $50 in compensation for the equipment's unavailability, during the applicable limitations period, and/or such subclasses as the Court may deem appropriate. ("the New York Class")

65. Excluded from the Classes are current and former officers and directors of Defendants, members of the immediate families of the officers and directors of Defendants,

Defendants' legal representatives, heirs, successors, assigns, and any entity in which they have or have had a controlling interest. Also, excluded from the Classes is the judicial officer to whom this lawsuit is assigned.

66.    Plaintiff reserves the right to revise the Class definitions based on facts learned in the course of litigating this matter.

67.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

68.    **Numerosity:** Both Classes are so numerous that individual joinder of all Class members is impracticable. The precise number of Class members is unknown to Plaintiff, but it is clear that the number greatly exceeds the number that would make joinder practicable, particularly given Defendants' comprehensive distribution and sales network. Class members may be notified of the pendency of this action by recognized, court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

69.    **Commonality and Predominance:** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members. All Class members were exposed to Defendants' deceptive and misleading reservation guarantee representation because this policy was stated on Defendants' website, where Plaintiff and Class members reserved their equipment.   Common questions of law or fact include:

a. whether Defendants' reservation guarantee policy was false and misleading because Defendants' failed to deliver on it;

b. whether this failure was intentional and/or systematic;

c. whether Defendants deprived Plaintiff and the other Class members of the benefit of their bargains when Defendants provided neither the equipment ordered nor the $50 promised compensation;

d. whether Defendants must disgorge any and all profits they have made as a result of their misconduct;

70. Defendants engaged in a common course of conduct in contravention of the laws Plaintiff seeks to enforce individually and on behalf of the other Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, are minor by comparison, in both quality and quantity, to the numerous common questions that dominate this action. Moreover, the common questions will yield common answers.

71. **Typicality:** Plaintiff's claims are typical of those of Class members because Plaintiff and the other Class members sustained damages arising out of the same wrongful conduct, as detailed herein. Plaintiff and Class members both ordered moving equipment from Defendants and sustained similar injuries arising out of Defendants' conduct in violation of New York State law and the consumer protection laws of other states. Defendants' unlawful, unfair and fraudulent conduct was the same irrespective of when and where it was encountered.  The injuries of Class members were caused directly by Defendants' misconduct. In addition, the factual underpinning of Defendants' misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all Class members. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of other Class members and are based on the same legal theories.

72. **Adequacy:** Plaintiff will fairly and adequately represent and pursue the interests of either Class and has retained competent counsel experienced in prosecuting nationwide class actions. Plaintiff understands the nature of his claims herein, has no disqualifying conditions, and will vigorously represent the interests of either Class. Neither Plaintiff nor Plaintiff's counsel has any interests that conflict with or are antagonistic to the interests of either Class. Plaintiff has retained highly competent and experienced class action attorneys to represent his interests and those of the Classes. Plaintiff and Plaintiff's counsel have the necessary resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the Classes and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the members of the Classes.

73. **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for Class members to individually seek redress for Defendants' wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court. Given the similar nature of Class members' claims and the absence of material or dispositive differences in

the statute and common laws upon which the claims are based, the Class will be easily managed by the Court and the parties.

74.    **Declaratory and Injunctive Relief:** The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendants have acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive or equitable relief with respect to the Classes as a whole.

75.    The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

76.    Defendants' conduct is generally applicable to the Classes as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Classes as a whole. As such, Defendants' systematic policies and practices make declaratory relief with respect to the Classes as a whole appropriate.

77.    Further, in the alternative, the Classes may be maintained as class actions with respect to particular issues, pursuant to Fed.R.Civ.P. 23(c)(4).

## CAUSES OF ACTION

### COUNT I

### DAMAGES FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection laws of the other states and the District of Columbia to the extent New York law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class).**

78. Plaintiff NEWMAN realleges and incorporates by reference the allegations contained in all preceding paragraphs of this Complaint and further alleges as follows:

79. Plaintiff NEWMAN brings this claim on behalf of himself and the other members of the Class for damages for violations of New York's Deceptive Acts or Practices Law ("NY GBL § 349").

80. NY GBL § 349 provides that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful."

81. To establish a claim under NY GBL § 349, it is not necessary to prove justifiable reliance. ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law [§] 349 … claims, it was error. Justifiable reliance by the plaintiff is not an element of the statutory claim." *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. App. Div. 2012) (internal citations omitted)).

82. Any person who has been injured by reason of any violation of the NY GBL § 349 may bring an action in their own name to enjoin the unlawful act or practice, an action to recover their actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual

damages up to one thousand dollars, if the court finds the Defendants willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

83.   The practices employed by Defendants, whereby Defendants advertised, promoted, and marketed their reservation guarantee policy and then failed to provide either the guaranteed reservation or the promised $50 compensation was unfair, deceptive, and misleading to Plaintiff and other Class members and in violation of NY GBL § 349.

84.   Defendants engaged in deceptive, unfair and unconscionable commercial practices toward the Class.  These include:

    a.   knowingly and falsely advertising their reservation guarantee policy with the intent to deceive Plaintiff and Class members into believing that they would either received the equipment they ordered or be compensated $50 if such is unavailable at the designated time and place;

    b.   causing Plaintiff and the Class to suffer a probability of confusion and a misunderstanding of legal rights, obligations and/or remedies;

    c.   intending that Plaintiff and Class members rely on Defendants' misrepresentations, in order to induce them to rent Defendants' equipment and disregard other moving options.

85.   The foregoing deceptive acts and practices were directed at consumers.

86.   Under all of the circumstances, Defendants' conduct in employing these unfair and deceptive trade practices was malicious, willful, wanton and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

87. Defendants' actions impact the public interest because Plaintiff and members of the Class were injured in exactly the same way as thousands of others renting moving equipment from Defendants.

88. By the acts and conduct alleged herein, Defendants committed unfair or deceptive acts and practices by not adhering to their reservation policy and failing to provide Plaintiff and the Class with the benefit of their bargain.

89. The practices employed by Defendants, whereby Defendants disseminated their reservation guarantee policy were unfair, deceptive, and misleading to Plaintiff and other Class members and in violation of NY GBL § 349.

90. The foregoing deceptive acts and practices were directed at consumers.

91. Plaintiff NEWMAN and the other Class members were injured in fact and lost money as a result of Defendants' deceptive and unfair trade acts. In order for Plaintiff and Class members to be made whole, they need must receive the $50 they are owed as well as punitive damages, restitution and disgorgement of all monies obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs, and other relief allowable under NY GBL § 349.

## COUNT II

## DAMAGES FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350 (FALSE ADVERTISING LAW)

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection laws of the other states and the District of Columbia to the extent New York law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class).**

92. Plaintiff NEWMAN realleges and incorporates by reference the allegations contained in all preceding paragraphs and further alleges as follows:

93.    Plaintiff NEWMAN brings this claim individually, as well as on behalf of members of the class, for violations of NY GBL § 350.

94.    Defendants have been and/or are engaged in the "conduct of … business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law § 350.

95.    New York Gen. Bus. Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." False advertising includes "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of … representations [made] with respect to the commodity …" N.Y. Gen. Bus. Law § 350-a(1).

96.    Defendants caused to be made or disseminated throughout New York and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and that were known, or which by the exercise of reasonable care should have been known to Defendants, to be untrue and misleading to consumers and the Class.

97.    Defendants' affirmative misrepresentations as alleged herein were material and substantially uniform in content, presentation, and impact upon consumers at large.

98.    Defendants have violated N.Y. Gen. Bus. Law § 350 because the misrepresentation regarding their reservation guarantee policy, as set forth above, was material and likely to deceive a reasonable consumer.

99.    Plaintiff NEWMAN and members of the Class have suffered an injury, including the loss of money or property, as a result of Defendants' false and misleading advertising. In ordering Defendants' moving equipment, Plaintiff and members of the Class relied on the misrepresentations promoted in the reservation guarantee policy. Those misrepresentations were

false and/or misleading because the moving equipment they ordered was not at the specified location and they were not compensated for this failure.

100. Plaintiff NEWMAN and members of the Class have suffered an injury, including the loss of money or property, as a result of Defendants' false and misleading advertising.

101. Pursuant to N.Y. Gen. Bus. Law § 350-e, Plaintiff NEWMAN and members of the Class seek monetary damages (including actual damages and minimum, punitive, or treble and/or statutory damages pursuant to GBL § 350-a (1)), restitution and disgorgement of all monies obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

**COUNT III**

**BREACH OF CONTRACT**

**(brought on behalf of the Nationwide Class in conjunction with the contract law of other states and the District of Columbia to the extent New York contract law is inapplicable to out-of-state plaintiffs, or, in the alternative, on behalf of the New York Class)**

102. Plaintiff NEWMAN realleges and incorporates by reference the allegations contained in all preceding paragraphs and further allege as follows:

103. Plaintiff NEWMAN brings this claim individually and on behalf of the Class.

104. When Plaintiff NEWMAN and the Class ordered moving equipment from Defendants, they and Defendants entered a contract according to which Defendants would either 1) provide the equipment ordered at the designated time and location or 2) pay Plaintiff and Class members $50. Defendants did neither of the two and are accordingly in breach of contract.

105. As a result of this breach, Plaintiff NEWMAN and the Class members are entitled to legal and equitable relief including damages, costs, attorneys' fees, and/or other relief as deemed appropriate by the Court.

## COUNT IV

## COMMON LAW FRAUD

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar common law of other states and the District of Columbia to the extent New York common law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class).**

106.  Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

107.  Defendants intentionally made materially false and misleading representations regarding their reservation guarantee policy.

108.  Plaintiff and members of the Class reasonably relied on Defendants' false and misleading representations and did not know the truth about the reservation guarantee policy at the time they ordered U-Haul moving equipment.  Defendants knew and intended that Plaintiff and the Class would rely on its misrepresentations.

109.  Plaintiff and members of the Class have been injured as a result of Defendants' fraudulent conduct.

110.  Defendants are liable to Plaintiff and members of the Class for damages sustained as a result of Defendants' fraud.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

a. An Order that this action be maintained as a class action and appointing Plaintiff as representative of the Nationwide Class or, in the alternative, the New York Class;

b. An Order appointing the undersigned attorney as class counsel in this action;

c. Restitution and disgorgement of all amounts obtained by Defendants as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

d. All recoverable compensatory and other damages sustained by Plaintiff and the Class;

e. Actual and/or statutory damages for injuries suffered by Plaintiff and the Class and in the maximum amount permitted by applicable law;

f. Statutory pre-judgment and post-judgment interest on any amounts;

g. Payment of reasonable attorneys' fees and costs; and

h. Such other relief as the Court may deem just and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff, on behalf of herself and all others similarly situated, demands a trial by jury on all questions of fact raised by the Complaint.

Dated: May 30, 2018

Respectfully submitted,

By: *_/s/ C.K. Lee_*
C.K. Lee

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*